Carl H. WILLIAMS, John W. Williams, Mrs. John A. Cline, Jr., John A. Cline, Jr., Mrs. F. S. Hollebeke, F. S. Hollebeke, Paul Eugene Williams, Jr., Lottie May Treas, Robert M. Treas, Byron Leslie Williams, Marvin Lester Williams, Ruby Leona Williams, Jessie R. Williams, Edith Lillian Williams, single, who is incompetent and who brings this suit by her next friend Carl H. Williams, and C. W. Barnett, Appellants,

v.

PACIFIC ROYALTY COMPANY, a corporation, Mary Whitehead Haworth, Palmer Haworth, Wilma Whitehead Wilson, George N. Wilson, Jr., and Josephine E. Ray, Appellees.

Carl H. WILLIAMS, John W. Williams, Mrs. John A. Cline, Jr., Mrs. F. S. Hollebeke, and husband, F. S. Hollebeke, Paul Eugene Williams, Jr., Lottie May Treas, and husband, Robert M. Treas, Byron Leslie Williams, Ruby Leona Williams, and husband, Jessie R. Williams, Edith Lillian Williams, a person of unsound mind, Angus G. Wynne, Douglas A. Williams, C. W. Barnett, Marvin C. Hanz, James D. Moore, Woodrow P. McWilliams, Robert W. Seiler and Scott Snodgrass, Appellants,

v.

Mary Whitehead HAWORTH, Palmer Haworth, Wilma Whitehead Wilson, George N. Wilson, Jr., Josephine E. Ray, and Shell Oil Company, a corporation, Appellees.

Nos. 5560, 5567.

United States Court of Appeals
Tenth Circuit.
July 26, 1957.

William A. McKenzie, Dallas, Tex. (Sims, Modrall, Seymour, Sperling & Roehl, Albuquerque, N. M., and Wynne & Wynne, Dallas, Tex., were with him on the brief), for appellants.

Ross L. Malone (J. D. Atwood and Charles F. Malone, Roswell, N. M., were with him on the brief), for appellees.

A. K. Montgomery, Santa Fe, N. M. (Paxton Howard and Richard L. Hughston, Midland, Tex., and Seth & Montgomery, Santa Fe, N. M., were with him on the brief), for appellee Shell Oil Co.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

**674**

PICKETT, Circuit Judge.

These two appeals, having to do with an interpleader action and an injunction which restrains the prosecution of a state court action, are an aftermath of the decision of this court in Pacific Royalty Company, a Corporation, v. Williams, 227 F.2d 49, certiorari denied 351 U.S. 951, 76 S.Ct. 847, 100 L.Ed. 1474, and are consolidated here for disposition. In the former case the plaintiffs, as heirs of Lester L. Williams and his wife, sought the nullification of a warranty deed which conveyed certain lands in Lea County, New Mexico to a man named McKinney, who was acting on behalf of J. E. Whitehead, and to quiet title in themselves. By conveyances after the McKinney deed, the record title to the minerals underlying the property in question was in Pacific Royalty Company, a corporation,[1] and had remained in it since 1926. Pacific was a family corporation with Whitehead as its president. In substance, the complaint alleged that because of the fraud of J. E. Whitehead, title to the minerals never passed to Pacific, and that the title remained unimpaired in Williams and his wife. They also contended that the deed was void because there had been no delivery to the grantee, McKinney. By counterclaim Pacific alleged that its title was good, and asked for a decree quieting title in it. We held that the Williams heirs had failed to sustain the charge of fraud and that there was sufficient delivery of their warranty deed to divest Williams and his wife of the title, and we directed a decree to be entered quieting title in Pacific.

Two days after the entry of judgment on the mandate, the Williams heirs brought an action in the New Mexico State Court, naming as defendants Pacific and a number of persons alleged to be the heirs of J. E. Whitehead. The complaint sought the identical relief against these defendants, upon the same grounds, as was sought in the Federal Court case. All of the defendants in the state court action were stockholders of Pacific, and some, but not all of them, were heirs at law of J. E. Whitehead. We shall for convenience refer to them as the "Whitehead heirs".

Thereafter the Whitehead heirs filed a petition for supplemental relief in aid of the Federal Court judgment. They allege that they were the successors in title of Pacific to the minerals in question; that the state court proceedings presented the identical claims which had been adjudicated and determined by the Federal Court; and that a relitigation of these issues in the state court, if successful, would deprive the petitioners of the benefits of the Federal Court judgment and destroy its effect. Acting under the provisions of 28 U.S.C.A. § 2283,[2] the District Court enjoined the further prosecution of the state court action. Pacific was then dismissed from the state court action and a motion was filed to dissolve the injunction. The Whitehead heirs brought suit against the Shell Oil Company, the lessee of the mineral rights, naming the Williams heirs as counter-defendants, for an accounting of all sums due from Shell to the owners of the minerals pursuant to existing lease provisions. There is no dispute as to these amounts. By counterclaim, Shell, which claims no interest in the accumulated fund, interpleaded all of those who were asserting an interest therein, and asked leave to pay the amount into the registry of the Federal Court. It was stipulated that the supplemental petition for injunction and the interpleader action should be determined by the court upon the same evidence. The district court overruled the motion to dissolve the injunction and ordered the money paid into the registry of the clerk, to be distributed pursuant to its orders.

1. Hereinafter referred to as "Pacific".

2. This section reads: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

■ The right of the Federal Court to enjoin the prosecution of a state court action to effectuate its judgment is not questioned. We have held that "A federal court is clothed with power to secure and preserve to parties the fruits and advantages of its judgment or decree. In the appropriate exercise of that power, the court has jurisdiction through means of a supplemental proceeding to enjoin the relitigation in a state court of a matter litigated, determined and adjudicated by its valid decree regularly entered, if the result of the relitigation would be to destroy the effect of the decree rendered in the United States Court." Berman v. Denver Tramway Corp., 10 Cir., 197 F.2d 946, 950. See also Jackson v. Carter Oil Co., 10 Cir., 179 F.2d 524, certiorari denied 340 U.S. 812, 71 S.Ct. 39, 95 L.Ed. 597.

A number of issues have been raised by the parties, but all of them may be disposed of by a consideration of the basic contentions of the Williams heirs. These contentions are founded upon the assumption that the proof and the actual findings in the Federal Court case conclusively show that the Whiteheads were the real owners of the property, consequently they were indispensable parties to that action and, had they been made parties, jurisdiction would have been destroyed because there would not have been complete diversity. Stated more simply, the contention is that the wrong parties were sued and that if the indispensable parties had been included the Federal Court would not have had jurisdiction. Further it is said that if it be considered that the Whitehead heirs acquired their rights as stockholders of Pacific by the distribution, or the conveyance of the corporate assets to them, the acquisition was prior to the filing of the original action, therefore they were the real owners of the minerals and were indispensable parties to the action and cannot take advantage of the judgment. We find no merit in either of these contentions.

■■ An indispensable party is generally said to be one who not only has an interest in the subject matter of the litigation, but such an interest that a final decree cannot be made without affecting that interest or leaving the controversy in such a condition that its final determination would not be consistent with equity and good conscience. Skelly Oil Co. v. Wickham, 10 Cir., 202 F.2d 442; Carter Oil Co. v. Crude Oil Co., 10 Cir., 201 F.2d 547; Dunham v. Robertson, 10 Cir., 198 F.2d 316; Choctaw & Chickasaw Nations v. Seitz, 10 Cir., 193 F.2d 456, certiorari denied 343 U.S. 919, 72 S.Ct. 676, 96 L.Ed. 1332. The Whitehead heirs, as descendants of J. E. Whitehead, or as the stockholders of Pacific, might have been proper parties to the action had the plaintiffs seen fit to include them, but they are not indispensable to a complete determination of the issues in the Federal Court case. Their rights, if they had any, were not affected by the action.

■ The Williams heirs, in a quiet title action, may prevail only on the strength of their title, and they have none. Lawson v. Serna, 48 N.M. 299, 150 P.2d 122; New Mexico Realty Co. v. Security Investment & Development Co., 27 N.M. 664, 204 P. 984; Union Land & Grazing Co. v. Arce, 21 N.M. 115, 152 P. 1143. In the previous quiet title action in the Federal Court, they sought to destroy the effect of a warranty deed by proving fraud or nondelivery. We held that the proof of fraud was insufficient to nullify the deed and that when the deed was delivered to Whitehead,[3] title passed from Williams and his wife. The chain of title from the Williams to Pacific was in issue in the counterclaim of Pacific, and a judgment was entered quieting title in Pacific as against the Williams heirs. There was no evidence that the Whitehead heirs ever asserted any claim to the property except as stockholders of Pacific, and they assert none now. It is quite apparent, and admitted by the

---

3. See Pacific Royalty Company, a corporation v. Williams, 10 Cir., 227 F.2d 49, 51, certiorari denied 351 U.S. 951, 76 S. Ct. 847, 100 L.Ed. 1474.

Williams heirs, that the purpose of the state court action is to relitigate these same charges of fraud and inadequacy of the conveyances by which Pacific obtained title. The decree on our mandate settled the issue of the ownership and the right of possession of the property as between the Williams heirs and Pacific.

We do not have a situation where the wrong party was sued in the first instance. Pacific, the record owner, claimed the title as against the Williams heirs, and that issue was decided by the Federal Court and became final. The pleadings in that Federal Court case alleged a controversy within its jurisdiction, and the record does not disclose an absence of jurisdiction. Contrary to the contention of the Williams heirs, there is nothing in the opinion filed by this court which can be construed as holding that the real owners of the property were the Whitehead heirs and that title was not in Pacific at the time of its dissolution. Our holding was that title passed by the Williams' deed and was in Pacific. By their state court action, the Williams heirs seek a contrary decision on the identical issues presented in the Federal Court action. By such action they hope to destroy the effect of the judgment quieting title in Pacific as against them. This they have no right to do by the simple expedient of naming the Whitehead heirs as defendants in another action.

The claim of the Williams heirs that Pacific had conveyed the minerals to its stockholders prior to the commencement of the original action turns on the question of the delivery of a corporate deed executed in conjunction with the dissolution proceedings. It is an elementary principle of law that a deed, to be valid and effective, must be delivered with the intent that it shall become presently operative and pass title to the grantee. 16 Am.Jur., Deeds, §§ 110,

115; 26 C.J.S. Deeds § 40; Waters v. Blacksom, 57 N.M. 368, 258 P.2d 1135; Evans v. Evans, 44 N.M. 223, 101 P.2d 179. On July 7, 1952 the stockholders of Pacific, a Delaware corporation, met and adopted a resolution for dissolution of the corporation. The corporate officers executed the necessary instruments and certificates required by Delaware law and forwarded them to a Delaware representative for filing. At the same time a corporate deed was executed for the purpose of conveying to each stockholder his proportionate share of the corporation assets when dissolution was effected.[4] This deed was placed in the corporate files. Three days later, on July 10, 1952, the original action was instituted. The dissolution documents were filed with the Secretary of the State of Delaware on July 14, 1952, and the certificate of dissolution was thereafter recorded and published as required by the Delaware law. Proof of the publication of the certificate was duly filed on July 18, 1952. Sometime thereafter Pacific was notified that the dissolution had been completed. On or about July 28, 1952, after the required United States revenue stamps were placed on the deed, it was duly recorded in Lea County, New Mexico. At the trial on the supplemental petition, the court found that the deed was executed pursuant to the dissolution proceedings and that there was no delivery of the deed to the stockholders prior to the institution of the Federal Court action. The evidence supports this finding. It plainly appears that there was no intent to deliver the deed or convey the property except upon completion of the corporate dissolution. The action of the stockholders at the July 7th meeting was not a declaration of a dividend, it only authorized the corporate officers to take the steps necessary to dissolve the corporation and then distribute the assets to the stockholders. Dissolution of

4. The Williams heirs were notified in writing of these corporate proceedings as early as September 10, 1952, and furnished with a copy of the corporate minutes of the meeting. This was prior to the filing of their first amended petition.

a Delaware corporation is accomplished by the filing of the required certificate of dissolution with the Secretary of State and by making the statutory publication. The corporation is dissolved upon the filing of the proof of publication. Del.Rev.Code, 1953, Title 8, § 275; Pure Oil Co. v. Franklin Real Estate Co., 15 Del.Ch. 227, 138 A. 602. The corporation remains in existence for the purpose of any litigation commenced before dissolution and for actions brought within three years after dissolution. Del.Rev.Code, 1953, Title 8, § 278; see also Addy v. Short, 47 Del. 157, 89 A.2d 136. The stockholders derive their title from and hold under Pacific through a conveyance which became valid after the institution of the original action. They were privies of Pacific in this action and bound by the Federal Court judgment and entitled to the judgment's fruits and benefits. 50 C.J.S. Judgments § 756; Freeman on Judgments, 5 Ed., Vol. 1, §§ 439, 440, 441; Southern Pacific R. R. Co. v. United States, 168 U.S. 1, 48, 18 S.Ct. 18, 42 L.Ed. 355; Providential Development Co v. United States Steel Co., 10 Cir., 236 F.2d 277; Bruszewski v. United States, 3 Cir., 181 F.2d 419, certiorari denied 340 U.S. 865, 71 S.Ct. 87, 95 L. Ed. 632; National Lead Co. v. Nulsen, 8 Cir., 131 F.2d 51, certiorari denied 318 U.S. 758, 63 S.Ct. 533, 87 L.Ed. 1131; Bernhard v. Bank of America Nat. Trust & Sav. Ass'n, 19 Cal.2d 807, 122 P.2d 892; Clegg v. United States, 10 Cir., 112 F.2d 886; Bowers v. Brazell, 27 N.M. 685, 205 P. 715; Lockhart v. Leeds, 12 N.M. 156, 76 P. 312.

■ The Williams heirs, having lost their claim to the minerals by judgment in the Federal Court action, were rightly restrained from relitigating that claim in the New Mexico State Courts, and, having no property rights in the minerals or the proceeds therefrom, are not in position to complain of the District Court's action in the interpleader proceedings.

Judgment affirmed.