LAMAR v. HOUSTON.

(Division B.   Nov. 7, 1938.)

[184 So. 293.   No. 33306.]

Hubert S. Lipscomb, of Jackson, and A. T. Patterson and E. L. Lamar, both of Calhoun City, for appellant.

**Roberts & Smith,** of Cleveland, for appellee.

264

**McGehee, J.,** delivered the opinion of the court.

The appellant filed has bill of complaint in the Chancery Court of Bolivar County to obtain a decree of divorce from appellee and the custody of their two children. He made as an exhibit to the bill a certified copy of a divorce proceeding theretofore had in the Chancery Court of Quitman County wherein the appellee had obtained a divorce from him and the award to her of the custody of the children and alimony and attorneys fees. The exhibit affirmatively disclosed that the Chancery Court of Quitman County had jurisdiction of both the subject matter and the parties, it having been alleged, and in effect adjudicated, that their separation took place in said county and that the complainant in said proceeding was a resident citizen thereof. Sufficient grounds were alleged for obtaining the relief therein granted,

and the decree recited the taking of oral proof in support thereof.

When the present suit came on for hearing the appellee interposed a demurrer which was sustained by the court below. The appellant having failed to amend or plead further the bill of complaint was dismissed; and thereupon, the appeal here was granted to settle the controlling principles of the case.

The bill of complaint in the case at bar seeks to impeach the decree of the Chancery Court of Quitman County on the ground of alleged fraud perpetrated by the appellee on the jurisdiction of said court in that she falsely alleged that the separation occurred in Quitman County when in truth and in fact, as alleged in the present suit by appellant, it occurred in Webster County.

The decree sought to be impeached was rendered on the 6th day of October, 1936, upon five days personal service of process on the appellant prior to the convening of the term, and this suit was not filed until January 19, 1938. No facts are alleged seeking to excuse such delay, or to charge that the appellant was in any manner mislead as to what course would be taken when the former proceeding came on for trial. Moreover, it appears that the appellee has again married during the period of delay in filing of the appellant's suit. We assume this to be true for the reason that he sues her as Gertrude Bonner (Mrs. Fred) Houston. While we recognize the rule in this State to be that ordinarily a judgment or a decree which has been rendered because of fraud on the jurisdiction of the court may be impeached either by a direct or collateral attack, as held in the cases of Plummer v. Plummer, 37 Miss. 185; Christian v. O'Neal, 46 Miss. 669; Richardson v. Brooks, 52 Miss. 118; McCraney et al. v. New Orleans & N. E. R. Co., 128 Miss. 248, 90 So. 881; and Wilson et al. v. McCorkle, 135 Miss. 525, 99 So. 366; nevertheless, it is also true that the person seeking to impeach such judgment or decree may be denied relief therefrom on account of laches. It is the gen-

eral rule that the acts for which a court of equity may, on account of fraud, set aside or disregard a judgment or decree on collateral attack between the same parties have relation only to fraud which is extrinsic or collateral to the matter tried by the first court, and not to fraud in the matter on which the judgment was rendered. It is said in 15 R. C. L. 762, that: "Relief is granted for extrinsic fraud on the theory that by fraud or deception practiced on the unsuccessful party, he has been prevented from fully exhibiting and trying his case, by reason of which there never has been a real contest before the court of the subject matter of the suit." See, also, United States v. Samuel R. Throckmorton, 98 U. S. 61, 25 L. Ed. 93. It is also stated in 1 Freeman on Judgment (5 Ed.), 718 (in discussing an adjudication by the court of its own jurisdiction), that frequently: "By some application or pleading, facts and circumstances are presented to the court upon the existence of which its right to undertake a determination of the case depends. Without the allegation and proof of such facts it could not rightfully proceed to adjudicate the matter involved. If the circumstances which give rise to the jurisdiction do not exist in a particular case the authority to act does not arise. But the question as to whether or not they do in fact exist is a matter primarily for the court whose powers are invoked, and it has jurisdiction to examine and determine whether the particular application is within or beyond its authority. Its decision in this respect is itself the exercise of a power conferred by the pleading or other act invoking its jurisdiction, and if such decision is incorrect, whether because of lack of evidence or for any other reason, it is nonetheless binding upon the parties unless and until set aside on appeal or by some other proceeding for that purpose. For jurisdiction to decide includes power to decide erroneously and to make the decision binding collaterally." And while our court in its decisions has not gone this far in according absolute verity to the recitals of the necessary juris-

dictional facts on the face of the proceedings wherein a judgment is rendered therein on the ground of alleged fraud, it will not hesitate to apply the principle that freedom from laches is generally a prerequisite to the granting of equitable relief from a judgment or decree not void on its face.

Where a defendant has been served with notice for the time required by law of the pendency of the suit and is thereby afforded an opportunity to appear and raise the question of jurisdiction and fails to do so, but acquiesces in the judgment or decree for such length of time as to work prejudice to the rights of third persons who may have acted on the faith of the validity of such judgment or decree, courts of equity will frequently deny him relief therefrom. It is stated in 15 R. C. L. 745, under the subject of laches barring relief against judgments or decrees, that: "It is a time honored and salutary rule that when one is defrauded by the conduct or act of another, he must within a reasonable time after the discovery of the fraud proceed to have the matter corrected and if he does not do so, he is held to have acquiesced therein." The court should act upon equitable principles in the exercise of its discretionary powers, and independent of any absolute limitations by statute on the time within which a judgment or decree may be impeached, the right may be defeated by laches. 1 Freeman on Judgments, Secs. 271, 272; Griffith's Chancery Practice, Secs. 33, 41. And in discussing the requisites of a bill to impeach a decree in equity, it is stated in Griffith's Chancery Practice, Sec. 645, that it should be alleged that "the facts presently presented for relief were not known to the complainant at the time of the decree complained of or if known that he was prevented by fraud or its equivalent from presenting them." In Metcalfe v. Perry, 66 Miss. 68, 5 So. 232, it was said that: "One who seeks, after the period for an appeal or bill of review, to attack and reopen a decree, should not only show want of knowledge of the proceeding complained of, and of all circumstances

calculated to put one on inquiry to lead to knowledge, but also should exclude the conclusion of inexcusable ignorance as to the suit," citing Brooks v. Spann, 63 Miss. 198.

The present suit was filed after the period for appeal from the former decree had expired, but within the time allowed for a bill of review, but the statutes of limitations have no application to the doctrine of laches, and we see no reason why the principle above quoted should not be applied to the present suit under the circumstances. On the grounds of public policy, it was held in Hester v. Hester, 103 Miss. 13, 60 So. 6, Ann. Cas. 1915B, 428, that a collateral attack upon a decree of divorce was not maintainable; and to now paraphrase the language of the court in that case, a setting aside of the divorce obtained by the appellee would render her second marriage and her living with her second husband illegal, and a violation of the laws of the land, and would render illegitimate the children, if any, born of the second marriage. It would also be unjust and inequitable to thus stigmatize the little girls born of the first marriage by having it now decreed that the divorce obtained by their mother was illegal, and that her living with Fred Houston is adulterous.

We are of the opinion that no ground for equitable relief is shown by the bill of complaint, when considered in connection with the exhibits attached thereto, and that the action of the court below in sustaining the demurrer was correct.

Affirmed.